UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COREY R. COLVIN,
on behalf of G.R.K., a minor,

                    Plaintiff,

                                                    5:15-CV-1371
v.                                                  (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                    Defendant.

_____

APPEARANCES:                              OF COUNSEL:

OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.               JOANNE PENGELLY, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Corey R. Colvin, on

behalf of his son, G.R.K. ("Plaintiff"), against the Commissioner of Social Security ("Defendant"

or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below,

_____

        [1]     Because Nancy A. Berryhill is now the Acting Commissioner of Social Security,
the Clerk of the Court is directed to substitute her for Acting Commissioner of Social Security
Carolyn W. Colvin as the Defendant in this action, pursuant to Fed. R. Civ. P. 25(d).

Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

At the time Plaintiff filed his application, he was a school-age child.  At the time of his most-recent hearing, Plaintiff was an adolescent.  Generally, Plaintiff's alleged impairments are epilepsy, extreme prematurity at birth, hearing loss, and attention deficit hyperactivity disorder ("ADHD").

### B.      Procedural History

On June 24, 2010, Plaintiff's father filed an application for Supplemental Security Income on behalf of Plaintiff, a minor.  Plaintiff's application was initially denied on October 7, 2010, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  On September 12, 2011, Plaintiff and his father appeared in a hearing (by video) before the ALJ, Susan Wakshul.  (T. 39-73.)  On September 23, 2011, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 23-34.)  On March 15, 2013, the Appeals Council denied Plaintiff's request for review, after which Plaintiff filed an action in the United States District Court for the Northern District of New York.  (T. 1-5, 663-65.)  On May 15, 2014, pursuant to a consent order entered by United States District Judge Norman A. Mordue on January 8, 2014, the Appeals Council remanded the case for further administrative proceedings.  (Tr. 660-61, 664-65.)

On January 9, 2015, another hearing was held, this time before ALJ Connor O'Brien. (Tr. 603-57.)  On September 18, 2015, the ALJ–considering Plaintiff's case *de novo*–issued a

written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 575-97.) Plaintiff did not file exceptions to the ALJ's decision with the Appeals Council, and the Appeals Council did not assume jurisdiction over the decision; thus, the ALJ's decision constitutes the Commissioner's final decision after remand.

### C.     The ALJ's Decision After Remand

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 578-97.) First, the ALJ found that Plaintiff was a "school-age child" on June 24, 2010, the date that his application for benefits was filed. (T. 578.) Second, the ALJ found that Plaintiff had not engaged in gainful activity since the application date. (*Id.*) Third, the ALJ found that Plaintiff's "history of premature birth and meningitis, epilepsy seizure disorder, hearing loss in his left ear, and ADHD" constituted severe impairments. (*Id.*) Fourth, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (T. 578-80.) In doing so, the ALJ considered Listings 102.01, 102.10, 111.02, 111.03, and 112.11. (Tr. 578.) Fifth, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that functionally equals the severity of the Listings. (T. 580-90.) Sixth, and finally, the ALJ found that Plaintiff has not been disabled, as defined by the Social Security Act, since June 24, 2010, the date on which his application was filed. (T. 597.)

**D.** **The Parties' Briefings on Their Cross-Motions for Judgment on the Pleadings**

**1.** **Plaintiff's Memorandum of Law**

Generally, in support of his motion for judgment on the pleadings, Plaintiff asserts six arguments. (Dkt. No. 12 [Plf.'s Memo. of Law].)

First, Plaintiff argues that the ALJ failed to comply with the Appeals Council's remand order because he did not obtain consultative examinations or medical expert evidence to assist in determining whether Plaintiff had an impairment, or combination of impairments, that meets, or functionally equals, a Listing; and thus the ALJ was "bound to [improperly] offer his own analysis and explanation" with respect to this issue. (*Id.* at 10.)

Second, Plaintiff argues that the ALJ erred in not according controlling weight to the opinion of Dr. Kathleen Shefner, M.D., one of Plaintiff's treating physicians, for four reasons: (a) he did not cite any record medical evidence in support of his conclusion that Dr. Shefner's opinion was at odds with significant record evidence; (b) he failed to consider the factors set forth in 20 C.F.R. § 416.927(c) in determining how much weight to accord Dr. Shefner's opinion (including Dr. Shefner's "longitudinal treating relationship" with Plaintiff); (c) although he found Dr. Shefner's opinion "at odds" with Plaintiff's positive response to treatment, he "failed to note that having an improved condition does not" preclude a finding of disability; and (d) to the extent that he was "unsure as to the basis of Dr. Shefner's opinion, he had a duty to" re-contact Dr. Shefner for clarification of her opinion. (*Id.* at 10-13.)

Third, Plaintiff argues that, because the ALJ erred in failing to accord Dr. Shefner's opinion controlling weight, the ALJ also erred in concluding that Plaintiff's ADHD did not meet Listing 112.11. (*Id.* at 14-15.)

4

Fourth, Plaintiff argues that the ALJ erred in not obtaining an updated medical opinion with respect to the issue of medical equivalency, given that the case was last reviewed by State agency medical staff in October 2010 and prior to the addition of other pertinent evidence to the record (specifically, exhibits 10F, 13F, 14F, 15F, and 16F). (*Id.* at 15-16.)

Fifth, Plaintiff argues that the ALJ erred in determining that Plaintiff's impairments do not functionally equal the Listings because substantial evidence supports the conclusion that Plaintiff has marked limitations in the domains of (i) acquiring and using information and (ii) interacting and relating to others. (*Id.* at 16-19.)

Sixth, Plaintiff argues that the ALJ erred in evaluating his credibility because (a) Plaintiff's activities of daily living (which the ALJ cited in evaluating his credibility) do not preclude a finding that he is disabled and (b) the fact that Plaintiff's treatment has been routine and/or conservative in nature does not preclude a finding that he is disabled. (*Id.* at 19-20.)

## 2.     Defendant's Memorandum of Law

Generally, in support of its motion for judgment on the pleadings, Defendant asserts seven arguments. (Dkt. No. 13 [Def.'s Memo. of Law].)

First, in response to Plaintiff's fifth argument, Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff's impairment did not functionally equal a Listing. (*Id.* at 5-6.) Specifically, Defendant argues as follows: (a) the ALJ's determination that Plaintiff had less than marked limitations in the domain of acquiring and using information was supported by (i) a child function report, in which Plaintiff's father indicated that Plaintiff had no problems talking, communicating, and processing in learning, (ii) the fact that Plaintiff was "passing overall in school," (iii) the fact that Plaintiff spent time using his computer and playing video

games, (iv) the fact that Plaintiff had an IQ score of 92, which is in the average range, (v) the fact that Plaintiff's treating physician (Dr. Shefner) found that Plaintiff had no problems in acquiring and using information, and (vi) the fact that state agency medical consultants, Dr. Randall and Dr. Prowda, opined that Plaintiff had limitations in these domains but that his limitations were less than marked; and (b) the ALJ's determination that Plaintiff had less than marked limitations in the domain of interacting and relating to others was supported by (i) reports from Plaintiff and his teachers that he was "very social and enjoyed interacting with others," and (ii) Dr. Shefner's opinion that Plaintiff "generally [had] no problem in interacting and relating to others." (*Id.* at 5-6.)

Second, in response to Plaintiff's third argument, Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or medically equal the requirements of Listing 112.11 because (a) Dr. Randall and Prowda opined that Plaintiff had less than marked limitations in the functional domains of acquiring and using information and interacting and relating to others, and no limitation in the functional domain of caring for yourself, and (b) Dr. Shefner's opinion that Plaintiff's ADHD caused marked impairment in cognitive/communicative functioning, social functioning, and personal functioning is inconsistent with her own finding that Plaintiff did not exhibit a marked loss in performing any activity that fell within the functional domains of acquiring and using information, interacting and relating with others, or caring for yourself.[2] (*Id.* at 8-10.)

---

[2]    In conjunction with this argument, Defendant argues that (a) evaluating a claimant's cognitive/communicative functioning under the Listing "is very similar to evaluating" a claimant's abilities in the functional domain of acquiring and using information, (b) evaluating a claimant's social functioning under the Listing is "very similar to evaluating" a claimant's abilities in the functional domain of interacting and relating with others, (c) evaluating a

Third, in response to Plaintiff's second argument, Defendant argues that the ALJ properly declined to afford controlling weight to Dr. Shefner's opinion for the same reasons cited in support of its second argument (i.e., because her opinion was inconsistent with other substantial evidence in the record). (*Id.* at 8-10.) Moreover (and relatedly), Defendant argues that the ALJ properly considered the relevant factors in evaluating the appropriate weight to afford Dr. Shefner's opinion, including the length of Dr. Shefner's treatment relationship with Plaintiff. (*Id.* at 10.)

Fourth, in response to Plaintiff's fourth argument, Defendant argues that the ALJ did not err in declining to obtain a medical expert's opinion regarding whether Plaintiff's impairments medically equaled the requirements of a Listing because (a) the record does not support the conclusion that the medical evidence submitted after Dr. Randall and Dr. Prowda issued their opinions that Plaintiff's impairments did not medically equal a Listing would alter their opinions, and (b) Plaintiff has not identified any such evidence. (*Id.* at 10-11.)

Fifth, in further response to Plaintiff's second argument, Defendant argues that the ALJ did not err in declining to re-contact Dr. Shefner because (a) the decision to re-contact a treating source is a matter within the ALJ's discretion and (b) even if Dr. Shefner's opinion was "internally inconsistent," this fact did not require re-contacting her because the ALJ was able to properly determine that Plaintiff was not disabled based on all of the evidence in the record. (*Id.* at 11-12.)

---

claimant's personal functioning under the Listing "is very similar to evaluating" a claimant's abilities in the functional domain for caring for yourself, and (d) evaluating maintenance of concentration, persistent, or pace under the Listing "is very similar to evaluating" a claimant's abilities in the functional domain of attending and completing tasks. (Dkt. No. 13 at 8-9 [citing 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 112.00(C) and 20 C.F.R. § 416.92a(g),(i),(k),(h)].)

Sixth, in response to Plaintiff's sixth argument, Defendant argues that the ALJ properly assessed Plaintiff's credibility based on Plaintiff's daily activities, symptoms, and the conservative nature of his course of treatment.  (*Id.* at 13.)

Seventh, in response to Plaintiff's first argument, Defendant argues that the ALJ complied with the Appeals Council's remand order because (a) the remand order required the ALJ to order a consultative examination or obtain medical expert testimony only if such actions were "warranted" or "necessary," and, based on the medical evidence, school records, and hearing testimony, the ALJ properly concluded that Plaintiff's impairment did not meet or equal a Listing.  (*Id.* at 13-14.)

## II.      RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *accord, Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, the Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of 18 is disabled, and thus eligible for Social Security Income benefits, if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity . . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to determine whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *accord*, *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test, which bears some similarity to the five-step analysis employed in adult disability cases, requires determining whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *accord, Kittles*, 245 F. Supp. 2d at 488. If so, then the child is ineligible for Social Security Income benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examining whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as "severe" because they cause more than minimal functional limitation. 20 C.F.R. § 416.924(c); *accord, Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, a child is disabled under the Social Security Act "if his impairment is as severe as one that would prevent an adult from working." *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990).

If a "severe" impairment exists, the third step requires determining whether the child's impairment(s) meet or medically equal the severity of a presumptively disabling condition identified in the Listings set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1. 20 C.F.R. § 416.924(d); *Zebley,* 493 U.S. at 526. Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a Listing, and the 12-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality considers how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include the following: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Functional equivalence is established if the child is determined to have an "extreme," or "more than marked," limitation in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An extreme limitation is an impairment that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A marked limitation exists when the impairment "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## III.   ANALYSIS

### A.   Whether the ALJ Erred in Applying the Treating Physician Rule and Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff's Impairments Do Not Meet the Listings

After carefully considering the matter, the Court answers the first question in the negative and the second question in the affirmative for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 13 at 7-10 [Def.'s Memo. of Law].) To those reasons, the Court adds the following analysis.

As noted above, Plaintiff argues that the ALJ erred in not affording Dr. Shefner's opinions controlling weight and, as a result, he also erred in determining that Plaintiff's impairments do not meet a Listing. (Dkt. No. 12 at 10-14 [Plf.'s Memo. of Law].)

The opinion of a treating source will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *accord, Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

When controlling weight is not afforded to the opinion of a treating physician, the ALJ should consider the following factors to determine the proper weight to afford the opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec*., 143 F.3d 115, 118 [2d Cir. 1998]). Although an explicit and "slavish recitation of each and every factor" is not required, "the ALJ's reasoning and adherence to the regulation [must be] clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir.

2013) (summary order); *accord, Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam) (affirming the ALJ's decision, which "d[id] not expressly acknowledge the treating physician rule," because "a searching review of the record" revealed that "the substance of the treating physician rule was not traversed"); *Marquez v. Colvin*, 12-CV-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013) ("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor[.]").  When an ALJ decides that affording controlling weight to a treating physician's opinion is unwarranted, he or she must "give good reasons in [the] notice of determination or decision for the weight [that he or she] give[s] [the claimant's] treating source opinion."  20 C.F.R. § 404.1527(c)(2); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (noting that the failure to provide "good reasons" for the weight afforded to a treating physician is a ground for remand).

In this case, on June 11, 2011, Dr. Shefner provided a medical source statement with respect to Plaintiff's ADHD.  (Tr. 543-47.)  Dr. Shefner opined–by checking "Yes" on the form–that Plaintiff has marked[3] inattention, impulsiveness, and hyperactivity, resulting in marked impairments in "age-appropriate cognitive/communicative function," "age-appropriate social functioning," and "age-appropriate personal functioning," as well as "[m]arked difficulties in maintaining concentration, persistence, or pace."[4]  (Tr. 544.)

---

[3]       The form medical source statement defines "marked" as "more than moderate but less than extreme," and a "marked limitation" as "aris[ing] when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  (Tr. 544.)

[4]       The language used in this section of the form tracks the requirements necessary for a child to meet Listing 112.11.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11; *accord, Johnson v. Colvin*, 15-CV-0476, 2016 WL 5394713, at *6 (N.D.N.Y. Sept. 27, 2016)

Moreover, Dr. Shefner rated Plaintiff's ability to perform certain activities in the domains of (among others) "Acquiring and Using Information" and "Interacting and Relating with Others." (Tr. 543, 545.) The form provided four rating options: "no/mild loss"; "moderate loss"; "marked loss"; and "extreme loss."[5] (*Id.*) In the domain of acquiring and using information, Dr. Shefner rated Plaintiff as having "no/mild loss" with respect to each of the five activities listed: (1) "[l]earns to read, write, and do simple arithmetic"; (2) "[b]ecomes interested in new subjects and activities (e.g., science experiments and stories from history); (3) "[d]emonstrates learning by producing oral and written projects, solving arithmetic problems, taking tests, doing group work, and entering into class discussions"; (4) "[a]pplies learning in daily activities at home and in the community (e.g., reading street signs, telling time, and making change)"; and (5) "[u]ses increasingly complex language (vocabulary and grammar) to share information, ask questions, express ideas, and respond to opinions of others." (Tr. 543.) With respect to interacting and relating with others, Dr. Shefner rated Plaintiff as having "moderate loss" in relation to two

(D'Agostino, J.) ("In order for a child to meet Listing § 112.11 (ADHD) . . . they must show: (1) medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, (2) resulting in a marked impairment in at least two of the following: cognitive/communicative function, social functioning, personal functioning, or maintaining concentration, persistence and pace.") (internal quotation marks omitted).

[5]     The form defines "no/mild" loss as "[n]o significant loss of ability in the named activity," "moderate loss" as a functional limitation that "causes some loss of ability to initiate, sustain or complete activities," "marked loss" as a functional limitation that "interferes seriously with the child's ability to initiate, sustain or complete activities," and "extreme loss" as a functional limitation that "interferes very seriously with a child's ability to independently initiate sustain, or complete [the] named activity." (Tr. 543.)

activities[6] and as having "no/mild loss" in relation to three activities.[7]  (Tr. 545.)  In the section

of the form related to Plaintiff's "Health and Physical Well-Being," Dr. Shefner noted that

Plaintiff's "ADHD requires in-school accommodations and medication."  (Tr. 546.)

The ALJ's reasoning in his decision, taken in the context of the record facts, demonstrates

that he properly applied the treating physician rule in evaluating, and affording little weight to,

Dr. Shefner's opinions with respect to Plaintiff's ADHD.[8]  (Tr. 578-85.)  The ALJ cited the

regulation setting forth the applicable factors, noted that, "[g]enerally," greater weight is

afforded to treating source opinions and, in particular, acknowledged that treating sources may

"provide a detailed, longitudinal picture of the claimant's medical impairments[.]"  (Tr. 585.)

The ALJ's detailed discussion of the other evidence in the record inconsistent with Dr. Shefner's

"extremely limiting" opinions about Plaintiff's capabilities, as well as the presence of "little in

the treatment records or objective clinical findings" supporting these opinions, reveals that he

properly applied the regulatory factors in his analysis.  (Tr. 581-89.)  As the ALJ noted, Dr.

Shefner's assessments appear somewhat internally inconsistent,[9] as well as more restrictive in

---

[6]    The activities were "[d]evelops more lasting friendships with same-age children"
and "[i]ncreasingly understands how to work in groups to create projects and solve problems."
(Tr. 545.)

[7]    The activities were  "[i]ncreasingly understands another's point of view and
tolerates differences (e.g., playing with children from diverse backgrounds)," "[a]ttaches to
adults other than parents (e.g., teachers of club leaders) and may want to please them to gain
attention," and "[s]hares ideas, tells stories, and speaks in a manner that can be readily
understood by familiar and unfamiliar listeners."  (Tr. 545)

[8]    It does not appear from the record that Dr. Shefner provided an opinion with
respect to the severity of Plaintiff's seizures or other impairments.

[9]    For example, Dr. Shefner's opinions that Plaintiff exhibited "[n]o/mild loss" in
any of the areas of the domain of acquiring and using information appears at least somewhat
inconsistent with her opinions that Plaintiff's impairments have resulted in marked impairment to
his age-appropriate cognitive/communicative function.  (Tr. 543-44.)  In the section of the form

describing Plaintiff's abilities than suggested by other record evidence, which include a child function report completed by Plaintiff's father,[10] the testimony at Plaintiff's hearing held in January 2015,[11] and the assessment provided by state agency consultants (Dr. Prowda, a psychiatrist, and Dr. Randall, a pediatrician).[12]

---

titled "Explanation of Your Assessment," Dr. Shefner stated, among other things, that Plaintiff's teachers reported that he experienced difficulty "transition[ing] smoothly" and required "an inordinate amount of adult supervision to get him through the day." (Tr. 547.) Moreover, Dr. Shefner noted that "[i]t is currently felt that [Plaintiff's] current status is the consequence/residual [*sic*] of his extreme prematurity and meningitis during his neonatal period." (Tr. 547.) However, these statements do not clarify who "currently felt" this, explain the apparent inconsistencies in Dr. Shefner's answers to the form's questions, or provide any additional insight into the condition with which the form is concerned (ADHD).

[10]     In the child function report, dated July 23, 2010, Plaintiff's father answered "No" to the question, "Is the child's ability to progress in learning limited?" (Tr. 338.) In response to the question of whether Plaintiff's impairment(s) "affect his . . . behavior with other people," Plaintiff's father responded that Plaintiff "[c]an make new friends," "[g]enerally gets along with you or other adults," and "[g]enerally gets along with school teachers," but also responded that Plaintiff did not "ha[ve] friends his or her own age" and did not "[p]lay team sports[.]" (Tr. 340.) In response to the question, "Is the child's ability to pay attention and stick with a task limited," Plaintiff's father answered that Plaintiff completes homework and "completes chores most of the time with direction." (Tr. 342.)

[11]     During the hearing, Plaintiff testified, among other things, that he typically completes his homework during study hall, cleans up his bedroom when it is messy, plays video games, reads books, has "a lot" of friends at school. (Tr. 616-17, 621-25.) However, Plaintiff also testified that he needs to be reminded to brush his teeth and wash his hands, and that, during class, he sometimes fails to pay attention, looks out the window, and "[d]aydream[s]." (T. 622-23.) Plaintiff's father testified that, with respect to Plaintiff's ADHD, "[a] lot of it is his ability to follow through on things. . . . [I]t's just repetitive reminding, routine building." (T. 639.) Moreover, Plaintiff's father testified that Plaintiff "sometimes has to get up and walk around during [his] classes," but that he responded to medication. (Tr. 647-48.)

[12]     Based upon a review of Plaintiff's medical and school records, Dr. Randall and Dr. Prowda opined that Plaintiff's impairment or combination of impairments, while severe, did not meet, medically equal, or functionally equal a Listing. (Tr. 537.) With respect to functional equivalency, Dr. Randall and Dr. Prowda opined as follows: (1) in the domain of acquiring and using information, Plaintiff has a less than marked limitation (based on the finding that he has "difficulty understanding and processing directions"); (2) in the domain of attending and completing tasks, Plaintiff has a marked limitation (based on the findings that his "inability to focus interferes with his learning ability" and the fact that his school records indicate that, "at times, [he] just gets up and wanders around the classroom" and "requires additional adult support

In short, the ALJ concluded that, while Plaintiff's medical history and school-related records (including teacher questionnaires, report cards, behavioral assessments, and individualized education plans ["IEP"]) demonstrate that Plaintiff suffers from impairments that impact multiple domains, these impairments did not meet or medically equal a Listing.  (Tr. 578-89.)  Because the ALJ thoroughly reviewed the other evidence in the record and, in the context of this evidence, sufficiently explained his reasons for affording Dr. Shefner's opinions less than controlling weight, the Court concludes that remand is unwarranted on this basis.[13]  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (noting that opinions of a treating physician "need not be given controlling weight where they are contradicted by other substantial evidence in the record, [and g]enuine conflicts in the medical evidence are for the Commissioner to resolve");  *accord, Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) ("[S]ince the ALJ comprehensively explained the reasons for discounting Dr. Gupta's medical source statement, he complied with the dictates of the treating physician rule.").  For the same reasons (as well as those set forth in Defendant's memorandum of law), the Court concludes that, contrary to Plaintiff's related argument, substantial evidence supported the ALJ's determination

_____

to remain on task"); (3) in the domain of interacting and relating with others, Plaintiff has a less than marked limitation (based on the findings that he "can be argumentative with adults," "needs to work [o]n his social skills with peers," and "tends to takeover [*sic*] friendships"; (4) in the domain of moving and manipulating objets, Plaintiff has a less than marked limitation (based on the fact that Plaintiff was engaging in occupational therapy for fine motor delay); (5) in the domain of caring for yourself, Plaintiff has no limitation; and (6) in the domain of health and physical well-being, Plaintiff has a less-than-marked limitation (based on his history of epilepsy, moderate hearing loss in his left ear, and fine motor delay).  (Tr. 539-40.)

[13]     While the ALJ's discussion of the record evidence is set forth throughout the decision (including in the section discussing functional equivalency), the ALJ expressly referenced the discussion of this evidence in the section of his decision related to medical equivalency.  (Tr. 579-80.)

that Plaintiff did not meet a Listing.[14]

**B.** **Whether the ALJ Erred by Not Obtaining an Updated Medical Opinion with Respect to the Issue of Medical Equivalency**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 13 at 10-11 [Def.'s Memo. of Law].) To those reasons, the Court adds the following analysis.

As noted above, Plaintiff argues that the ALJ erred in not obtaining an updated medical opinion with respect to the issue of medical equivalency, given that additional record evidence was collected after State agency medical staff reviewed Plaintiff's case in October 2010. (Dkt. No. 12 at 15-16 [Plf.'s Memo. of Law].)

Pursuant to SSR 96-6p, an ALJ and the Appeals Council "must obtain an updated medical opinion from a medical expert" when "additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing[s.]" SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996). However, a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinion "or the ALJ's finding relying thereon." *Liberatore v. Colvin,* 15-CV-1483, 2016 WL 7053443, at * 7 (N.D.N.Y. Dec. 5, 2016) (Suddaby, C.J.) (citing *Abar v. Colvin*, 15-CV-0095, 2016 WL 1298135, at *6 [N.D.N.Y. Mar. 31, 2016] [Suddaby, C.J.]); *accord, Atiyeh v. Comm'r,* 16-CV-0392, 2017 WL 74717, at *5 (N.D.N.Y. Jan. 6, 2017) (Baxter, M.J.); *Camille v. Colvin,* 104 F. Supp 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd,* 652 F. App'x 25, 28-29 (2d Cir.

---

[14]     Moreover, the Court concludes that the ALJ did not err in not re-contacting Dr. Shefner for clarification or "additional details" related to her medical source statement (Dkt. No. 12 at 13 [Plf.'s Memo. of Law]) for the reasons set forth in Defendant's memorandum of law (Dkt. No. 13 at 11-12 [Def.'s Memo. of Law]).

2016) (finding that the ALJ did not err in assigning great weight to a medical consultant's opinion where the subsequent treatment notes not reviewed by the consultant were not materially different from the medical records reviewed by the consultant).

Here, Plaintiff argues that certain records (constituting Exhibits 10F, 13F, 14F, 15F, and 16F), totaling approximately 90 pages, were received after "State agency medical staff" (i.e., Dr. Randall and Dr. Prowda) performed their assessment.  However, Plaintiff neither identifies a specific record that may have changed their opinions with respect to medical equivalency, nor explains how any such record could be expected to cause these changes in opinion.  These shortcomings alone warrant rejection of Plaintiff's argument.  In the alternative, the Court has reviewed the exhibits and finds that, although they are generally consistent with Plaintiff's other medical and school-related records that reflect his attentional and behavioral struggles, they provide no basis for concluding that they may have altered the state agency consultants' opinions that his impairment(s), while severe, did not meet or equal the Listings.[15]  Accordingly, the Court cannot conclude that the ALJ abused his discretion by failing to obtain an additional medical opinion with respect to equivalency in light of these records.  *See generally Carpenter v. Comm'r*

---

[15]    The exhibits at issue include, *inter alia*, treatment records related to Plaintiff's physical growth (862-64), history of seizure disorder (Tr. 931-32 [noting that, in June 2014, Plaintiff underwent an EEG, which was normal], 865-66 [noting that, in July 2014, Plaintiff had been "seizure free" since 2009 and was "doing well on his medication"]), and general wellness (*e.g.*, Tr. 890 [treatment record from Dr. Shefner, dated 6/13/2012, reflecting that, in relation to his ADHD, Plaintiff reported that his school performance was "alot [*sic*] better," and that he felt "well connected with peers," but that he was "unable to initiate tasks" or to "move on to the next task"], 883-85 [treatment record from Dr. Shefner, dated 3/18/2013, reflecting that Plaintiff was receiving "all Bs" in school and "appear[ed] to" have "very good" cognitive abilities, but that he was having "some trouble" with "inappropriate behavior" at school], 876-79 [treatment record from Dr. Shefner, dated 8/22/13, reflecting that Plaintiff, then 11 years old, presented with "[n]o concerns," had a "good group of friends," and was participating in martial arts and swimming, but that his ADHD was manifesting "increasing defiance" of his father], 875 [treatment record from Dr. Shefner, dated 2/26/2014, noting that Plaintiff reported "just miss[ing] HR by 2 points," passing classes, and improved socialization]).

*of Soc. Sec.*, 614 F. App'x 482, 487-88 (11th Cir. 2015) ("SSR 96-6p clearly states that an updated medical opinion is only required *when the ALJ is of the opinion* that the additional medical evidence may change the finding that an impairment is not equivalent to any of those listed in the Social Security Administration regulations. Here, the ALJ's decision reflects that the new evidence would not have changed the expert opinion's conclusions. Substantial evidence supports that decision.") (citation omitted); *Van Valkenberg v. Astrue*, 08-CV-0959, 2010 WL 2400455, at *17 (N.D.N.Y. May 27, 2010) (Bianchini, M.J.), *adopted*, 2010 WL 2400443, at *1 (June 10, 2010) (Hurd, J.) ("[O]btaining an updated opinion from a medical expert depends upon the ALJ reaching the opinion that the claimant's impairments could be equivalent to a listing. Thus, . . . the Court must conclude that seeking additional evidence from a medical expert was within the discretion of the ALJ and the Court can find no error in the ALJ's exercise of that discretion in this case.").

### C. Whether Substantial Evidence Supports the ALJ's Determination that Plaintiff Has Less Than Marked Limitations in the Domains of Acquiring and Using Information and Interacting and Relating with Others

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendant's memorandum of law. (Dkt. No. 13 at 5-7 [Def.'s Memo. of Law].) To those reasons, the Court adds the following analysis.

With respect to the domain of acquiring and using information,[16] the ALJ determined

---

[16]     In assessing a child's functioning in the domain of acquiring and using information, the ALJ considers how well the child learns information, and how well he or she uses the information learned. 20 C.F.R. § 416.926a(g). The regulations provide that a school-age child (i.e., a child "age 6 to attainment of age 12") should be able to learn to read, write, do math, discuss history and science, use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others. 20 C.F.R. § 416.926a(g)(2)(iv). The regulations provide that an adolescent (i.e., a child "age 12 to attainment of age 18") in middle and high school "should continue to demonstrate what [he or she] has learned in academic assignments (i.e., composition, classroom discussion, and

that, although the record contains "some evidence that [Plaintiff] has some difficulty understanding and processing directions," the record as a whole supports the conclusion that he has "sufficient functioning" in the domain of acquiring and using information. (Tr. 591.) In particular, the ALJ noted that (a) Plaintiff's function report indicated that he does not have any problems "talking, communicating, and progressing in learning," (b) during the relevant time period, Plaintiff was passing in school overall, (c) Plaintiff reported spending time using his computer and playing video games, and (d) Plaintiff has a Full Scale IQ score of 92 (which is in the average range). (*Id.*)

Plaintiff argues that his IEPs for the 2009-10 and 2010-11 school year reflect his difficulty in understanding and following oral directions, and that teacher questionnaires prepared by his teachers support the conclusion that he has problems with, among other things, expressing ideas, comprehending written material, and learning new material. (Dkt. No. 12 at 16-17 [Plf.'s Memo. of Law, citing Tr. 153, 169, 371-72, 408].) A review of the ALJ's decision in its entirety demonstrates that he considered all of the record evidence in reaching his

---

laboratory experiments)." 20 C.F.R. § 416.926a (g)(2)(v). The child should be able to use what he or she "ha[s] learned in daily living situations without assistance (i.e., going to the store, using the library, and using public transportation)," comprehend and express simple and complex ideas, use increasingly complex language (vocabulary and grammar) in learning and daily living situations (i.e., to obtain and convey information and ideas), and learn to apply these skills in practical ways that will help her enter the workplace after finishing school (i.e., carrying out instructions, preparing a job application, or being interviewed by a potential employer). *Id.*

Some examples of limited functioning in this domain are when a child (i) does not demonstrate understanding of words about space, size, or time (e.g., in/under, big/little, morning/night), (ii) cannot rhyme words or the sounds in words, (iii) has difficulty recalling important things learned in school yesterday, (iv) has difficulty solving mathematics questions or computing arithmetic answers, or (v) talks only in short, simple sentences and has difficulty explaining what she means. 20 C.F.R. § 416.926a(g)(3)(i)-(v). These examples do not apply to a particular age group and do not necessarily describe a "marked" or "extreme" limitation in the domain. 20 C.F.R. § 416.926a(g)(3).

determination, including Plaintiff's school records.[17]  The Court concludes that the ALJ's

determination is supported by substantial evidence, including the evidence discussed above and

the opinions of state agency medical consultants Dr. Randall and Dr. Prowda.

Moreover, with respect to the domain of interacting and relating with others,[18] the ALJ

determined that, although Plaintiff appeared to "struggle in establishing relationships" and

"could be argumentative" as a school-age child, Plaintiff's testimony, medical records, and

reports from his teachers indicated that his difficulties in this domain were less than marked and,

---

[17]    The Court notes that the ALJ determined that, based on Plaintiff's "longstanding problems with focus and concentration," as reflected by (among other things) his enrollment in special education courses, Plaintiff has a marked limitation in the domain of attending and completing tasks.  (Tr. 592-93.)

[18]    This domain considers how well a child is able to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  The regulations provide that a school-age child (i.e., a child "age 6 to attainment of age 12") should be able to develop more lasting friendships with children of the same age, begin to understand how to work in groups to create projects and solve problems, have an increasing ability to understand another's point of view and tolerate differences, and be well able to talk to people of all ages, share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand.  20 C.F.R. § 416.926a(i)(2)(iv).  Moreover, the regulations provide that an adolescent (i.e., a child "age 12 to attainment of age 18") "should be able to initiate and develop friendships with children [of the same] age and . . . relate appropriately to other children and adults, both individually and in groups."  20 C.F.R. § 416.926a(i)(2)(v).  The child should also be able to solve conflicts with peers, family members, or adults outside of the family, express his or her feelings, ask for assistance, seek information, describe events, and tell stories, in all types of environments (i.e., at home, in the classroom, at a part-time job, and in sports or extra-curricular activities), and with all types of people (i.e., parents, siblings, friends, classmates, teachers, employers, and strangers).  *Id.*

Some examples of limited functioning in this domain include when a child (i) "does not reach out to be picked up and held by [a] care-giver," (ii) has no close friends or all friends are older or younger than the child, (iii) avoids or withdraws from people he or she knows, or is overly anxious or fearful of meeting new people, (iv) has difficulty playing games or sports with rules, (v) has difficulty communicating with others, including "in using verbal and nonverbal skills to express [himself or herself], in carrying on a conversation, or in asking others for assistance," or (vi) has difficulty speaking intelligibly or with adequate fluency.  20 C.F.R. § 416.926a(i)(3)(i)-(vi).

22

moreover, improved over time.  (Tr. 593-94.)  Although Plaintiff argues that his functional

limitations in this domain are reflected in teacher questionnaires prepared by his instructors and

his IEPs (Dkt. No. 12 at 17-18 [Plf.'s Memo. of Law]), the Court cannot conclude that the ALJ

erred in evaluating and weighing the record evidence.  As a result, remand is unwarranted on this

asserted ground.  *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an

administrative decision rests on adequate findings sustained by evidence having rational

probative force, the court should not substitute its judgment for that of the Commissioner.");

*Valente*, 733 F.2d at 1041.[19]

For these reasons, as well as those set forth in Defendant's memorandum of law, the

Court concludes that the ALJ's determinations with respect to the issue of functional equivalency

are supported by substantial evidence

**D.      Whether the ALJ's Credibility Determinations Were Supported by
          Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13 at 12-13 [Def.'s Memo.

of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by

objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009)

(Mordue, C.J., adopting Report-Recommendation of Bianchini, M.J.) (quoting *Simmons v. U.S.

R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]).  However, the ALJ "is not required to accept [a

_____

[19]      The Court would add only that, as discussed above, Dr. Shefner opined that, with
respect to the domain of acquiring and using information, Plaintiff had "[n]o/mild loss"; and,
with respect to the domain of interacting and relating with others, Dr. Shefner rated Plaintiff as
having "moderate loss" in relation to two activities and as having "[n]o/mild loss" in relation to
three activities.  (Tr. 543, 545.)  Therefore, to the extent that Plaintiff may be understood to
argue that the ALJ erred in affording less than controlling weight to Dr. Shefner's opinions
concerning his functional limitations, any such error would have been harmless.

plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270 (internal quotation marks omitted).

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 270-71 (internal quotation marks omitted).

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* at 271 (citing §§ 404.429[c][3][i]-[vii]) (internal citations and quotation marks omitted). Moreover, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki*, 534 F. App'x at 75 (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]). Accordingly, the Court must uphold an ALJ's

credibility determination where, as here, it is supported by substantial evidence.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms, and that the evidence "support[s] finding severe impairments that impact [Plaintiff] in multiple domains."  (Tr. 589.) However, the ALJ concluded that the intensity, persistence, and limiting effects of Plaintiff's symptoms did not reflect marked limitations in two domains, or an extreme limitation in one domain; and, therefore, that his allegations of disability (and those of his father) were not fully credible.  (Tr. 589-90.)  In reaching this conclusion, the ALJ properly considered reports from Plaintiff and his father that Plaintiff, among other things, engages in physical activities, plays video games, completes chores, and socializes with friends, as well as Plaintiff's relatively conservative treatment, which included regular doctor's appointments and medication.  (Tr. 590.) Contrary to Plaintiff's argument (Dkt. No. 12 at 20 [Plf.'s Memo. of Law]), under the circumstances, the ALJ's decision does not suggest that he found Plaintiff to be free of limitations merely because he was treated on an outpatient basis.

For these reasons, as well as those set forth in Defendant's memorandum of law, the Court concludes that the ALJ's credibility determinations were supported by substantial evidence.

E.      **Whether the ALJ Complied with the Appeals Council's Remand Order**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendant's memorandum of law.  (Dkt. No. 13 at 13-14 [Def.'s Memo. of Law].)  To those reasons, the Court adds the following analysis.

The failure to comply with the Appeals Council's remand order may itself be grounds for remand.[20]  However, the portion of the remand order relied upon by Plaintiff directed the ALJ, "*if necessary*, [to] obtain medical expert evidence to assist in determining whether [Plaintiff] meets or functionally equals a Listing . . . ."  (Tr. 661 [emphasis added].)  For the reasons discussed at greater length above, the Court concludes that the ALJ's determinations were supported by substantial evidence, including Plaintiff's medical records, school records, and testimony (a significant portion of which post-dated the Appeals Council's remand order). Accordingly, the Court cannot conclude that the ALJ failed to comply with the Appeals Council's remand order.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court shall substitute Nancy A. Berryhill for Acting Commissioner of Social Security Carolyn W. Colvin as the Defendant in this action, pursuant to Fed. R. Civ. P. 25(d); and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

---

[20]     *See Gorman v. Astrue,* 08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (Mordue, C.J., adopting Report-Recommendation of Bianchini, M.J.) (remanding for failure to comply with the Appeals Council's remand order); *Scott v. Barnhart,* 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009) ("The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand.").

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 28, 2017
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge